UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MELVIN W. QUINTANILLA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. CV 16-01043-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Melvin W. Quintanilla ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for supplemental security income. For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 21, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff applied for disability insurance benefits on January 22, 2013, alleging disability beginning December 7, 1998. Administrative Record ("AR") 92, 208-09. He applied for supplemental security income on January 31, 2013, alleging disability beginning November 11, 2010. AR 93, 210-19. These claims were denied initially, AR 120-30, and upon reconsideration, AR 133-36, 142-45. Plaintiff requested a hearing, which took place on January 27, 2015; the Administrative Law Judge ("ALJ") took testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). AR 39-71. At the hearing, Plaintiff amended his alleged onset date to October 19, 2012, and withdrew his disability insurance benefits application. AR 42-44.

In a written decision issued February 26, 2015, the ALJ denied Plaintiff's claim. AR 21-33. The ALJ found that Plaintiff had the severe impairments of bipolar disorder and schizoaffective disorder, but his impairments did not equal the severity of a listed impairment. AR 26-27. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff could (1) maintain attention and concentration to perform simple, routine, and repetitive tasks; (2) have occasional interaction with coworkers and supervisors, but no direct interaction with the general public; and (3) work in an environment with occasional changes to the work setting and occasional work-related decision-making. AR 27-28. Based on the VE's testimony, the ALJ found that Plaintiff was capable of performing his past relevant work as an assembler, and, in the alternative, he could work as a cleaner, packager, and machine feeder. AR 31-33. Therefore, the ALJ concluded that Plaintiff was not disabled. AR 33.

Plaintiff requested review of the ALJ's decision. AR 17. On December

21, 2015, the Appeals Council denied review. AR 1-6. This action followed.

## II.
## DISCUSSION

The parties dispute whether the ALJ (1) properly rejected the opinion of Dr. Luke Meier and (2) adequately considered the opinion of Dr. Raman Chahal. See Joint Stipulation ("JS") at 4.

**A.    Relevant Facts**

**1.    Dr. Meier**

Dr. Meier examined Plaintiff on February 19, 2013, and completed a Mental Health Comprehensive Evaluation. See AR 495-504. Dr. Meier opined that Plaintiff's prognosis was "poor." AR 503. Dr. Meier noted that, despite Plaintiff's continual use of psychotropic medication, Plaintiff "continues to have difficulty controlling his auditory and visual hallucinations which encourage him to hurt himself, others, and destroy property." Id. Dr. Meier also noted that Plaintiff was "in a persistent state of agitation and isolation." Id. Dr. Meier found that Plaintiff's "sever[e] and chronic mental illness has negatively impacted all areas of his daily functioning." Id. Dr, Meier noted that, throughout his evaluation, Plaintiff "demonstrated that because of the severity of his symptoms, it is doubtful that he could obtain or maintain full time employment." Id. Thus, Dr. Meier opined that Plaintiff was "unemployable and unable to do any gainful/substantial work for the next twelve months." Id.

The ALJ gave no weight to Dr. Meier's opinion for the following reasons:

> Dr. Meier assessed the claimant's Global Assessment Functioning (GAF) scores to be as low as 43 and 32 and noted that he was unemployable and unable to perform substantial gainful activity for the next 12 months. First, the determination of disability is

3

solely reserved for the Commissioner. Moreover, Dr. Meier's opinions are inconsistent with the objective medical evidence. He noted that the claimant was "failing his classes." However, he reported that he was getting "B"s and "C"s. Additionally, [Dr. Meier] noted that the claimant was unable to watch TV because he is unable to concentrate. However, the claimant's aunt noted that he spends his day watching television. Moreover, the report noted that he frequently got into trouble during his employment as an Assembler and had several physical altercations with his coworkers. However, the claimant reported that he was laid off and not fired, and he had no problems with his coworkers. As such, Dr. Me[]ier's report is inconsistent with the objective medical evidence and the claimant's reported activities and is therefore unreliable.

AR 29 (citations omitted).

### 2. Dr. Chahal

In April 2013, state agency psychological consultant Dr. Anna Franco reviewed Plaintiff's medical files and found him to be capable of simple one- to two-step work with limited public contact. AR 72-81. In August 2013, state-agency psychiatric consultant Dr. Chahal reviewed Plaintiff's file upon reconsideration and agreed that Plaintiff was not disabled. See AR 106-17. As is relevant here, Dr. Chahal wrote, "[Plaintiff] can handle [limited public contact] and can maintain superficial work related interaction with coworkers and supervisors." AR 115.

The ALJ gave great weight to Dr. Franco's and Dr. Chahal's opinions:
Dr. Chahal found the clamant to have mild limitations in activities of daily living; moderate limitations in social functioning; moderate limitations in concentration, persistence and pace and

4

no episodes of decompensation. . . . [Dr. Franco's and Dr. Chahal's opinions] are given great weight. They both thoroughly reviewed the claimant's medical records and . . . provided detailed notes justifying their findings. Further, their opinions are consistent with the objective medical evidence and the recent treatment records.

AR 29.

**B.     Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[2] A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. 66 Fed. Reg. at 58011 ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, citations to 20 C.F.R. § 416.927 are to the version in effect from August 24, 2012 to March 26, 2017.

examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 416.927(c).

**C.  Analysis**

   **1.  Dr. Meier**

The ALJ gave specific and legitimate reasons for rejecting examining physician Dr. Meier's controverted opinion.[3] First, the ALJ found that Dr. Meier's opinion was "inconsistent with the objective medical evidence." AR 29. Dr. Meier opined that it was "doubtful" Plaintiff could maintain fulltime employment because of his "difficulty exercising self-control" and history of physical altercations with coworkers. AR 503; see AR 29 (citing AR 501). However, a few days after he was evaluated by Dr. Meier, Plaintiff reported that "he had not had any mood swings or impulsive reactions." AR 28 (citing AR 525). The ALJ noted that Plaintiff appeared to be "stable" in October 2013

---

[3] Dr. Meier's opinion conflicted with those of state-agency consultants Dr. Franco and Dr. Chahal.

6

and February 2014. AR 28-29 (citing AR 701, 703). The ALJ also noted that, by April 2014, Plaintiff "was noted to be capable of controlling his anger and was noted to not have aggressive behaviors." AR 29 (citing AR 699). This was a specific and legitimate reason for rejecting Dr. Meier's opinion. See Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit . . . physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings[.]"); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Plaintiff argues that the ALJ erred by failing to address Dr. Meier's opinion that his difficulty concentrating and his auditory and visual hallucinations "interrupt his ability to consistently maintain good attendance and punctuality in a work setting." See JS at 8 (citing AR 503). He cites Dale v. Colvin, 823 F.3d 941 (9th Cir. 2016), in support of the premise that "[w]here the ALJ addresses part of Dr. Meier's opinion, but did not reject the opinions on residual functional capacity, the ALJ failed to properly explain the weight given to that opinion." JS at 8. In Dale, the Ninth Circuit held that when an ALJ divides an "other" witness's opinion into two parts, and provides germane reasons for discounting only one of those parts, it is error for the ALJ to discount the entire opinion on that basis. Id., 823 F.3d at 945. Here, the ALJ did not divide Dr. Meier's opinion into two parts, and the Ninth Circuit explicitly limited its holding to situations where the ALJ's own decision recognized such a division. See id. at 946 n.3 ("We need not decide whether an ALJ who has *not* divided an other source's testimony into distinct parts may discount that witness' entire opinion when only some of the opinion is inconsistent with evidence in the record."). In any event, the ALJ noted that the objective medical evidence documents Plaintiff's hallucinations and lack of focus. AR 31 (citing AR 705). But the ALJ found that "the more recent

7

evidence indicates that [Plaintiff's] condition has improved and he merely 'spaces off a little bit' in class." Id. (citing AR 703). The ALJ also noted that treatment notes from December 2014 indicated that Plaintiff was "oriented, alert, with fair impulse control and his memory to be grossly intact." Id. (citing AR 680).

Second, the ALJ found that Dr. Meier's report was "unreliable" because it appeared to rely on Plaintiff's own statements regarding his limitations, which were "inconsistent" with his "reported activities." See AR 29. Dr. Meier wrote that Plaintiff "is unable to watch TV . . . because he is unable to concentrate." AR 502. Yet on February 22, 2013—a mere three days after Dr. Meier's examination—Plaintiff's aunt reported that his hobbies and interests were playing video games, exercising, and "watch[ing] TV." AR 245. She also reported that Plaintiff did these things "every day."[4] Id. Plaintiff points out that the ALJ gave "little weight" to the report provided by Plaintiff's aunt. Id. The ALJ did not reject her statements about Plaintiff's daily activities; he discounted only the portion or her report that was "not supported by the clinical or diagnostic medical evidence." AR 30. An ALJ may accept part of lay-witness testimony while rejecting other parts of their testimony if valid reasons are given that are germane to each witness and that are supported by substantial evidence. See Bell-Shier v. Astrue, 312 F. App'x 45, 49 (9th Cir.

---

[4] Plaintiff argues that the ALJ's statement that he "spends his day watching television" mischaracterizes his aunt's report. See JS at 9 (citing AR 29). The ALJ was not implying that Plaintiff spends all day watching television; rather, the ALJ referenced Plaintiff's aunt's report to show that it was inconsistent with Plaintiff's report to Dr. Meier—that Plaintiff was unable to watch television because of his inability to concentrate. See AR 29. Plaintiff also argues that his aunt "does not describe the level of attentiveness [he] possesses when watching television." JS at 9. But nothing in the record indicates that the ALJ was unreasonable in ascribing the plain meaning of "watch" to Plaintiff's aunt's report.

8

2009) (finding that ALJ did not err in accepting claimant's friend's statements when friend described greater range of activities for claimant than claimed by claimant even though ALJ discounted portion of testimony based on friend's belief in claimant's subjective reports).The ALJ also noted inconsistencies between the record and Dr. Meier's findings regarding Plaintiff's employment history. Dr. Meier wrote, "[Plaintiff] has held only one job for a period of 6 months. In 2009 he worked for Solectron Telescopes. . . . [H]e frequently got into trouble with his employer because he could not carry out simple instructions and would miss many days due to his hallucinations. He also had several physical altercations with his co-workers because he was unable to interact socially with them." AR 501. Yet on November 2, 2012, Plaintiff reported that his "best job" was in a company assembling telescopes for 2 years, and that he "had no problems with co-workers" at that job. AR 468. Plaintiff argues that the record shows that he "has gotten into physical fights or arguments at other jobs." JS at 9 (citing AR 468). Nevertheless, what Plaintiff told a clinician in November 2012 and what he told Dr. Meier in February 2013 are very different descriptions of what was clearly the same job. The ALJ also found Plaintiff's allegations of a disabling condition "to be generally not credible"—a finding Plaintiff does not challenge. AR 30. As such, the ALJ permissibly discounted Dr. Meier's opinion on this basis. See Tonapetyan, 242 F.3d at 1149 (holding that when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's subjective complaints).

  Plaintiff argues that the third inconsistency mentioned by the ALJ—Dr. Meier's report that Plaintiff was failing his classes, while Plaintiff reported Bs and Cs elsewhere—was not actually an inconsistency. JS at 8-9. The Court agrees. On November 2, 2013, Plaintiff reported that he was getting Bs and Cs in school. AR 468. Dr. Meier authored his report over three months later,

9

which is arguably enough time for Bs and Cs to become failing grades. But even if this portion of the ALJ's findings is not supported by substantial evidence, the ALJ gave other specific and legitimate reasons supported by substantial evidence for rejecting Dr. Meier's opinion. See DeBerry v. Comm'r of Soc. Sec. Admin., 352 F. App'x 173, 176 (9th Cir. 2009) (finding harmless error where ALJ gave "several specific and legitimate other reasons supported by substantial evidence for rejecting [physician]'s opinion that [the claimant] was disabled").

Plaintiff also criticizes the ALJ for clarifying that the disability determination is reserved to the ALJ, not Dr. Meier.[5] JS at 7-8. Plaintiff cites Social Security Ruling 96-5p, which states that ALJs must always carefully consider medical source opinions, including about issues reserved to the Commissioner. See SSR 96-5p, 1996 WL 374183, *2 (July 2, 1996). The ALJ's opinion reflects that he read and carefully considered Dr. Meier's opinion. The ALJ rejected the opinion for specific and legitimate reasons, and simply noted that Dr. Meier's ultimate conclusion that Plaintiff was "unable to do any gainful/substantial work for the next twelve months," AR 503, had no independent weight.

Accordingly, remand is not warranted on this ground.

**2.    Dr. Chahal**

Plaintiff argues that the ALJ ignored Dr. Chahal's opinion that Plaintiff could maintain "superficial work related interaction" with coworkers and

---

[5] According to Plaintiff, the ALJ rejected Dr. Meier's opinion because the disability determination is reserved to the ALJ. See JS at 7-8. The Court does not interpret the ALJ's clarification on this point as one of his reasons for rejecting Dr. Meier's opinion; rather, the ALJ was "setting the record straight" that Dr. Meier's ultimate conclusion as to Plaintiff's ability to work was a conclusion reserved to the Commissioner.

10

supervisors. See JS at 16. The Court disagrees. The ALJ's RFC finding reflected Dr. Chahal's opinion about Plaintiff's ability to interact with coworkers and supervisors. Dr. Chahal found that (1) Plaintiff was moderately limited in his ability to interact appropriately with the general public and get along with coworkers without distracting them or exhibiting behavioral extremes, and (2) Plaintiff was not significantly limited in his ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism to supervisors, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 114-15. When asked to explain these social interaction limitations in narrative form, Dr. Chahal wrote that Plaintiff "can handle [limited public contact] and can maintain superficial work related interaction with coworkers and supervisors." AR 115. Given that the ALJ limited Plaintiff to carrying out "simple" instructions, performing "simple, routine, and repetitive tasks," and "occasional interaction with coworkers and supervisors," AR 27-28, it follows that such interaction would be brief and superficial.

In any event, the ALJ also found that Plaintiff was capable of performing his past relevant work as an assembler (DOT 739.687-030), or, in the alternative, other jobs that exist in the national economy—cleaner (DOT 381.687-018), packager (DOT 920.587-018), and machine feeder (DOT 699.686-010). AR 31-33. The descriptions in the Dictionary of Occupational Titles ("DOT") for each of these jobs indicate that dealing with people is "not significant." See DOT 739.687-030, 1991 WL 680180 (indicating that job involves taking instructions or helping people but "not significant[ly]"); DOT 381.687-018, 1991 WL 673258 (same); DOT 920.587-018, 1991 WL 687916 (same); DOT 699.686-010, 1991 WL 678871 (same). The DOT descriptions also indicate that talking is "not present." Id. In addition, the DOT states that each of these jobs is unskilled, which indicates limited interaction with people.

See SSR 85-15, 1985 WL 56857, *4 (Jan. 1, 1985) (explaining that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people"). Nothing else in the descriptions for the identified jobs indicates that they involve more complex than superficial interaction with coworkers and supervisors. Thus, to the extent the ALJ failed to limit Plaintiff to "superficial work related interaction with coworkers and supervisors," it was inconsequential to the outcome of the ALJ's final disability determination. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding that, too extent ALJ failed to incorporate "occasional" postural limitations identified by claimant's physicians, any error was harmless because sedentary jobs in which ALJ determined claimant could work required only "infrequent stooping, balancing, crouching, or climbing"). Remand is not warranted on this ground.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: April 21, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge